GIBSON v. INTERNATIONAL FREIGHT-
ING CORPORATION (two cases).

Nos. 9658, 9743.

United States Court of Appeals
Third Circuit.

Argued Jan. 20, 1949.

Decided March 17, 1949.

Abraham E. Freedman and William M. Alper, both of Philadelphia, Pa. (Charles Lakatos and Freedman, Landy and Lorry, all of Philadelphia, Pa., on the brief), for Gibson.

Thomas E. Byrne, Jr., and Rowland C. Evans, Jr., both of Philadelphia, Pa. (Springer H. Moore, Jr., and Krusen, Evans & Shaw, all of Philadelphia, Pa., on the brief), for International Freighting Corporation.

Before GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a personal injury action by a seaman against the general agent of his ship, which resulted in a judgment in favor of the defendant. There is a cross

appeal by the defendant from an order of the District Court requiring it to pay to the plaintiff the expenses of plaintiff's counsel in attending the taking of a defense deposition in Chicago.

The appellant Gibson was second assistant engineer on the S. S. Ernest W. Gibson, owned by the United States and for which appellee was general agent. While the ship was on the high seas enroute from Cardiff to Jacksonville, Gibson, who said he had not been well, testified that he attempted to turn the throttle to shut off the steam. He said the wheel stiffened and that he applied unusual effort. He felt a sharp pain in his chest and slumped over, unable to continue. There is a conflict regarding the medical care and attention given him from that time on. It developed that he had a heart condition which he claims was caused or aggravated by the throttle incident and by improper care thereafter. He sued the defendant on the ground of unseaworthiness of the S. S. Gibson because of the alleged condition of the throttle and for negligence because of the alleged failure to render him prompt and adequate medical attention.

■ Appellant asserts that two witnesses he says he located after the trial would have materially substantiated his story respecting the condition of the throttle which was all important and which, as the verdict indicates, the jury did not believe. He says it was defendant's fault that he did not know of these witnesses prior to trial and that because of this the court below should have allowed him a new trial. The witnesses Scott, an oiler, and Third Mate Clayton had been members of the S. S. Gibson's crew during the period involved in this action.

By its answers and supplemental answer to interrogatories, defendant furnished plaintiff the names and addresses of the crew and where requested, their shifts or watches. Defendant, complying with the plaintiff's demand, also furnished the names of the crew it had interviewed and from whom statements had been obtained. Defendant's supplemental answers to the interrogatories were filed May 6, 1947. That same day an attorney in Baltimore, acting for the defendant, obtained a signed statement from Scott who was aboard a ship in that harbor. There is nothing in the record to show that the statement was received in Philadelphia the same day it was taken which was also the day the supplemental answers were filed. And there is nothing in the record to impugn the good faith of the defense attorneys in not stating in the supplemental answers that a statement had been obtained from Scott. Whether in fact it actually had been obtained at the time the supplemental answers were filed does not appear and as the appellant concedes, "It is conceivable that this statement was obtained later in the day, after the supplemental answers had been filed." Appellant further admits that he had the right to serve additional interrogatories from time to time. This case was not tried until November 18, 1947. There were a number of proceedings in the litigation prior to that date and ample opportunity to serve such additional interrogatories. Scott, the oiler, was known to Gibson who had been one of the ship's engineers and who had named Scott in his oral examination by the defense as a possible witness. Scott was not in the employ of appellee when the interrogatories were filed or after that and it is not shown that the defense had any other information as to his whereabouts than had the plaintiff.

Under the particular circumstances we are not convinced that the defense had the duty to advise plaintiff it had a statement from Scott. Without such duty there would be no excuse for allowing Scott's testimony. It was neither newly or after discovered evidence. Gibson, seemingly better than anyone else knew of Scott's relationship to the matter and had advised his lawyers of Scott. It happened that his attorneys' letters to Scott at his mother's home (Scott's address) went unanswered. A check at that address would have readily located Scott.

The situation respecting Clayton presents no difficulty. One of the defense attorneys talked with him by telephone on October 21, 1947 at which time there admittedly were no interrogatories outstanding. Clayton was not then or later in the defendant's employ. As with Scott, the

defendant had only his home address, the same as plaintiff possessed. No obligation is shown on the part of the defendant to advise plaintiff that one of its lawyers had talked with Clayton. As near as can be ascertained from the record, the first time plaintiff contacted this witness was December 20, 1947, after the trial. No reason is suggested for this other than the fact that the defense had failed to advise plaintiff of the telephone talk the attorney had with Clayton in October and this is no excuse.

We are satisfied that the District Court in refusing to grant a new trial because of the offer of the testimony of Messrs. Scott and Clayton did not abuse its discretion.

 Appellant asserts that the District Judge in his charge based liability on negligence alone thus precluding recovery for unseaworthiness; he also says that one of the defendant-appellee's points for charge which was affirmed and read to the jury, gave the latter an incorrect definition of unseaworthiness. A careful examination of the whole charge shows that there was no substantial error involved in connection with either of these items.

In the beginning of his charge, the Court told the jury the elements constituting plaintiff's claim for damages and regarding his contention of unseaworthiness, and said:

"* * * he puts several causes for damages before us for consideration. The first one is the condition of the machinery on the ship. He says that the machinery on the ship didn't operate properly, that this valve stuck, and that it stuck in a manner that was unusual, and either through the negligence of the persons who installed the machinery or negligence of a fellow seaman who last shut it down, or some inherent defect in the machinery itself, that is, in the valve, it stuck, *and in that way the ship was not a seaworthy, efficient ship. That is the claim that he has put forth.*"[1]

After referring to evidence that the valve had stuck, the Court then said, "That is a question of fact that you will have to

decide,—as to whether the ship was in a seaworthy condition with reference to this appliance that has been described."

Immediately following the above specific reference to the seaworthy phase of plaintiff's claim, the Court took up the second branch of the case, the negligence feature. He said:

"Then, the plaintiff puts forth another claim for your consideration: He claims that after his condition became evident to the master of the ship and the officers of the ship, that he was not given the immediate relief that he should have been given."

The Court stated particulars of the evidence on this and asked rhetorically, "Now was that negligence on the Captain's part?" He went on to explain the captain's duty under the circumstances and what would constitute negligence.

At the end of the charge proper, the Court charged plaintiff's seaworthy points practically verbatim saying:

"Because of the condition of the seaman's employment, the policy of the maritime law has been to consider the seamen as a ward of the admiralty and the law places a great responsibility upon the operator of the vessel for the safety and welfare of the members of the crew. The seaman is subject to the strict discipline of the sea and all the conditions of his service require him to accept without question and without protest such working conditions and appliances as are furnished by the vessel once he embarks on the voyage. These conditions have generated the exacting requirements that the vessel must provide seamen with safe and seaworthy appliances with which to do his work and likewise require that safe appliances be furnished when and where the work is to be done."

\* \* \* \* \* \*

"The operator must not only provide but must also maintain and keep in proper working order all of the appliances and equipment appurtenant to the vessel."

"A much higher obligation as to equipment and appliances is imposed by law

---

[1] All emphasis in this and following quotations from the charge is supplied.

upon employers of seamen than upon employers of shoreworkers who may at anytime withdraw from the service and refuse to use equipment and appliances considered unsafe. Under the maritime law, there is an absolute duty on the part of the ship and her owners or operators to provide a seaworthy vessel and to supply and keep in order the proper appliances and equipment appurtenant to the ship. This obligation does not depend upon the exercise of reasonable care but is absolute. In other words, there is absolute liability on the part of the owners or operators of a merchant vessel for injuries sustained by a seaman by reason of the unseaworthiness of the vessel or the failure to supply and keep in order the proper appliances appurtenant to the ship."

*"If you find that the throttle in the engine room was not in proper operating condition and required unusual effort to turn it, and if you find that plaintiff's illness was precipated by an unusual exertion while attempting to turn the throttle, while in an improper condition, your verdict should be for the plaintiff and you should award him damages for all of the consequences flowing from that act."*

After that the Court charged a long and exhaustive point of plaintiff concerning the negligence feature of the case, concluding that in the event of a finding for plaintiff on that theory "you may award the plaintiff full damages for the consequences flowing from the failure to furnish such prompt, proper and adequate medical treatment and attention."

Taking up the defense requests the Court refused to charge Point No. 2 which was the only point having to do with seaworthiness i. e. the throttle condition, prior to the negligence requests. The Court charging the latter said:

"Unless you find, under all the evidence, that this defendant, or its servants, agents, or employees were negligent and that the illness or alleged aggravation thereof of which the plaintiff complains resulted from that negligence, your verdict must be for the Defendant."

"The question for your determination is whether the Plaintiff is entitled to an award for damages. In order to be entitled to any award for damages, he must meet the burden of proof imposed upon him by law to establish that his illness or alleged aggravation thereof, was the direct result of the defendant's negligence."

\* \* \* \* \* \*

"If, under the evidence, you find that the Defendant was negligent but that the Plaintiff's illness was not caused or aggravated by the Defendant's negligence, then your verdict must be for the Defendant."

Following this the Court in amending and charging a defense request on the question of the cause or aggravation of plaintiff's heart condition which was the injury claimed, reiterated the basic problems of liability with which he had introduced his charge. He said:

"It is for the jury to decide it the alleged turning of the valve or the alleged failure of the Defendant to have the Plaintiff examined by a doctor or hospitalized while in Jacksonville, had anything to do with increasing this deposit collecting inside of the coronary artery. The contention of the Plaintiff is that the exertion on the valve or throttle and the failure to have a doctor examine the Plaintiff at Jacksonville or to hospitalize him there contributed to the ultimate occlusion or complete stoppage of blood passing through that artery. You must weigh this medical testimony and *determine whether the Plaintiff has met the burden of proof imposed upon him by law to establish with reasonable certainty that the alleged exertion in closing the throttle and/or the neglect to have the plaintiff examined by a doctor or hospitalized at Jacksonville, produced the occlusion or complete stoppage.* If you believe, from all of the medical testimony, that these two factors did not cause or subsequently contribute to the occlusion or stoppage, then your verdict must be for the Defendant.' "

The Court then charged the thirteenth defense request which appellant contends is an incorrect statement of the law of seaworthiness. It read:

"It is the duty of the Defendant to provide the Plaintiff with a safe place to work or what in maritime law is known as a sea-

worthy vessel. This does not mean that everything about the vessel must at all times work with clocklike precision. The intricate machinery is designed to be worked by men of normal health. It is not designed or built so that a person with a heart condition, or any physical ailment, can manipulate it without danger of undue exertion. A vessel is not held to such a high degree of duty. Unless there is something about the vessel, its appliances or machinery, which might cause harm or injury to a normal person, there can be no liability and if you so find, your verdict should be for the Defendant."

Interrogatories to be answered by the jury were submitted on behalf of the plaintiff and the Court gave these to the jury with instructions regarding them. These as answered by the jury are:

"(1) Did the defendant fail in its duty to provide and keep in proper order a safe and properly operating throttle in the engine room?

"Answer: Yes or No No

"(2) If your answer to the preceding interrogatory be yes, then was that failure a precipitating factor in the development of the plaintiff's condition?

"Answer: Yes or No

"(3) Did the defendant fail in its duty to provide and obtain proper care and attention for the plaintiff?

"Answer: Yes or No No

"(4) If your answer to the preceding interrogatory be yes, then did that failure materially contribute to the development of the plaintiff's condition?

"Answer: Yes or No

"(5) Is your verdict for the plaintiff or the defendant?

"Answer: *Defendant*"

The very last word by the Court to the jury before the latter retired had to do with whether or not it was undisputed that plaintiff had moved or attempted to move the throttle. The Court said:

"I did not mean to convey any such impression, because it is affirmed on one side and denied on the other, and *you will have to say whether Mr. Gibson attempted to turn that throttle or not as testified to, or whether that is entirely false as the defendant believes it to be. I will leave that entirely up to you.*"

It is apparent that the charge was equally concerned with seaworthiness and negligence. The court stressed them both and the jury could not have failed to understand that seaworthiness was as much in the case as negligence. In dealing with the defense negligence requests, the court charged them in the order presented. If they stood alone they would make for confusion but quite obviously they had to do only with the negligence feature of the litigation. Considering the entire charge there was no occasion for the jury to so misinterpret it as to conclude that their verdict was to be confined to negligence. The plaintiff-appellant relied on the stiff throttle evidence to support his claim of unseaworthiness and this was fully presented to the jury by the court. The jury's answer to the first interrogatory which was drawn by the plaintiff's attorneys shows that they were fully aware of the dual nature of plaintiff's suit.

What the court said in charging the thirteenth defense request, is of no greater substance when viewed against the complete charge. Throughout the charge it was emphasized that the plaintiff's claim regarding unseaworthiness was that the valve or throttle was "stuck" and the court told the jury that the crux of liability as to this point depended on whether the throttle was "in a proper operating condition or required unusual effort to turn it." The court had also charged that the defendant's duty to provide a seaworthy vessel and to supply and keep in order the proper ship's appliances and equipment was absolute. Cf. Mahnich v. Southern S. S. Co., 321 U.S. 96, 101, 64 S.Ct. 455, 88 L.Ed. 561. With this background the objected to language of the request is of no real significance. The testimony about the valve or throttle was not that it was stuck or stiff from the standpoint of someone with a heart condition but in the ordinary sense of those words. The jury could have so found and if they had, then within the court's instruction, they could have concluded that the throttle was not in proper operating condition and required unusual

effort to turn it. In that event the answer to the first interrogatory would have been "yes" and if the jury had also concluded this caused or aggravated plaintiff's condition there would have been a verdict for the plaintiff on that element of the suit. As the Supreme Court said in Fuller Co. v. McCloskey, 228 U.S. 194, 201, 33 S.Ct. 471, 473, 57 L.Ed. 795, "The court, in other portions of the charge, correctly instructed the jury * * * and there is not the slightest ground for the conclusion * * * that any prejudicial error was committed."

The last sentence of the request is complained of as making the seaworthy test that of negligence. While the sentence could have been more aptly worded we think the clause "might cause harm or injury" reasonably viewed in the light of the charge means "could possibly cause harm or injury." The practical effect of the instruction therefore was to retain the true norm for seaworthiness, namely, absolute duty that the ship's appliances be in proper working condition. It is the fact that the jury directly found that under that correct test, the defendant did not fail in its duty to provide and keep in proper order, a safe and properly operating throttle in the engine room. In other words, the jury found that the throttle was not stiff or stuck and so, completely disposed of plaintiff's unseaworthy theory.

■ It is also urged as a ground for reversal that a letter written by the defense attorneys to plaintiff's attorneys was received in evidence. Production of the medical log of the ship had been demanded on behalf of the plaintiff. Counsel for the defense offered the letter of his firm written by his trial associate as "explaining *our* efforts to locate the medical log." (Emphasis supplied.) He stated that he could put his associate on the stand but was reluctant to do so as the latter was engaged with him in the trial of the case. The letter set out that the attorneys had again requested the defendant to make a

thorough search for the medical log and that the latter had replied that it did not have the log. The letter was offered to show that the defense attorneys had tried to obtain the log and thus had complied with the court's order. The court in permitting the letter to go into evidence instead of insisting that counsel take the stand, did technically err on the side of court-room manners but inconsequentially so because plaintiff's attorney could still argue, as apparently he did, that irrespective of the defense attorneys' efforts, the *defendant* itself had not produced the log and any inferences derivable from that circumstance.

■ The cross appeal concerns the deposition of an important defense witness which was taken in Chicago. The District Court sitting en banc allowed the plaintiff the expenses of his attorney in representing him at the deposition.

The Court made the allowance under Rule 30(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which reads:

"After notice is served for taking a deposition by oral examination, * * * the court * * * may make an order that the deposition shall not be taken * * * or that it may be taken only on written interrogatories, * * * *or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression.*" (Emphasis supplied.)

We think that under the quoted rule this matter was well within the discretion of the court below. Plaintiff's offer to save expense by having the deposition taken through written interrogatories had been rejected by the defense. There was nothing to show that the witness could not be produced at the trial. Actually the witness, was so produced and did testify in person.

The judgment of the District Court in No. 9658 and the order of that Court in No. 9743, will be affirmed.