[No. D000499. Fourth Dist., Div. One. Oct. 18, 1985.]

HERSCHEL WAYNE SMITH, Plaintiff and Appellant, v.
MARILYN M. FISHING, INC., Defendant and Respondent.

454

COUNSEL

Margolis, McTernan, Scope & Epstein, Barbara E. Hadsell and Sol Scope for Plaintiff and Appellant.

Robert G. Dyer and Dyer, Brewer & Walton for Defendant and Respondent.

OPINION

**KREMER, P. J.**—Plaintiff Herschel Smith appeals a judgment on special verdict favoring defendant Marilyn M. Fishing, Inc., on his complaint for damages for personal injuries.

### I

Smith was a crewman on defendant's tuna fishing vessel. Smith claimed he injured his back while lifting porpoises from the vessel's hopper, dragging the porpoises to a discharge hole on the vessel's side and dumping them overboard.

Smith sued defendant, alleging the vessel was unseaworthy because safely lifting, dragging and discharging porpoises was normally a two-man job and the vessel's unusual structure forced him to work alone in a confined space large enough for only one person. Before working on defendant's vessel, Smith had suffered back pain and undergone back surgery. He alleged defendant's vessel's unseaworthiness aggravated his preexisting back condition. Defendant conceded the doctrine of unseaworthiness allows recovery by a crewman whose preexisting disability is aggravated by a vessel's unseaworthy condition.

The matter was tried to a jury. The parties presented conflicting evidence about the vessel's unseaworthiness. By special verdict the jury found the

vessel was not unseaworthy. The court entered judgment for defendant. Smith appeals, claiming instructional error.

## II

The court instructed the jury at length about unseaworthiness: "The Plaintiff claims that he suffered injury while a member of a crew of a vessel because of the unseaworthiness of the vessel, and that he is entitled to damages as a result.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Because of the condition of the seaman's employment, the policy of the maritime law is to consider . . . the seaman as a ware of the Admiralty and the law places a great responsibility upon the operator of a vessel for the safety and welfare of the members of the crew.

"The seaman is subject to the strict discipline of the sea and all the conditions of his service require him to accept, without question and without protest, such working conditions and appliances as are furnished by the vessel once he embarks on the voyage.

"It is the duty of the Defendant, Marilyn M. Fishing, Inc., to provide the Plaintiff, Mr. Smith with a seaworthy vessel. This means that the vessel, its equipment and work methods must be reasonably fit for an ordinary seaman—one equal in disposition, physical condition and seamanship to the ordinary man in the calling.

"[S]tated in another way, under Maritime Law, every ship owner or operator owes to every crew member of the crew employed aboard the vessel, the nondelegable duty to keep and maintain the ship and all its decks, passageways, appliances, gear, tools and equipment of the vessel in a seaworthy condition at all times.

"To be in a seaworthy condition means to be in a condition reasonably suitable and fit to be used for the purpose or use for which provided or intended.

"An unseaworthy condition may result from the lack of adequate manpower to perform a particular task on the ship, or an improper use of otherwise seaworthy equipment, or from directing work to be performed in an unsafe manner.

"Liability for an unseaworthy condition does not in any way depend upon negligence or fault or blame. And that applies, of course, to the Defendant.

Seaworthiness has nothing to do with negligence insofar as the Defendant is concerned. . . .

"That is to say, the ship owner or operator is liable for all injuries and consequent damages proximately caused by an unseaworthy condition existing at any time, even though the owner or operator may have exercised due care under the circumstances, and may have had no notice or knowledge of the unseaworthy condition which proximately caused the injury or damage.

"The Plaintiff is not required to prove the entire fishing vessel was unseaworthy. He must prove that the equipment involved was not reasonably fit for its intended purpose and that he was injured as a result.

"If you find any unfitness of the vessel's equipment, then it does not matter, as far as the Defendant's liability is concerned, how long or how short a time the condition of unseaworthiness existed prior to the accident, nore [sic] does it matter that the Defendant did not know of its existence before the injury occurred. The length of time and the Defendant's knowledge, or lack of knowledge, are not pertinent here, if the elements of the Plaintiff's claims are established re unseaworthiness.

"The fact that there was an injury, standing alone, does not permit the jury to draw the inference that the ship was unseaworthy.

"It is claimed by the Plaintiff that the Defendant did not furnish to Plaintiff a seaworthy vessel. Under the law, Defendant owes to fishermen working on his vessel the duty to provide a seaworthy vessel together with seaworthy equipment.

" 'Seaworthy' means that the vessel and her equipment were reasonably fit for the purpose for which they were intended to be used. Perfection is not required. A Defendant discharges his duty if he furnishes a vessel reasonably adequate in materials, construction and equipment for the trade or service in which the vessel is employed."

■ Smith contends in defining unseaworthiness the court prejudicially misstated the law in saying "the vessel, its equipment and work methods must be reasonably fit for an ordinary seaman—one equal in disposition, physical condition and seamanship to the ordinary man in the calling." He does not attack any other portion of the instructions.

### III

■ The parties agree defendant had the duty to provide Smith with a seaworthy vessel. However, defendant was not ". . . obligated to furnish

an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service. [Citation.]" (*Mitchell v. Trawler Racer, Inc.* (1960) 362 U.S. 539, 550 [4 L.Ed.2d 941, 948-949, 80 S.Ct. 926].)

■ The challenged instruction told the jury to be seaworthy defendant's vessel, its equipment and its work methods must be reasonably fit for a seaman of ordinary disposition, physical condition and seamanship. Citing *Gibson v. International Freighting Corporation* (3d Cir. 1949) 173 F.2d 591, defendant specifically requested the challenged instruction. In *Gibson,* the court found no substantial error in an instruction reading: " 'It is the duty of the Defendant to provide the Plaintiff with a safe place to work or what in maritime law is known as a seaworthy vessel. This does not mean that everything about the vessel must at all times work with clocklike precision. The intricate machinery is designed to be worked by men of normal health. It is not designed or built so that a person with a heart condition, or any physical ailment, can manipulate it without danger of undue exertion. A vessel is not held to such a high degree of duty. Unless there is something about the vessel, its appliances or machinery, which might cause harm or injury to a normal person, there can be no liability and if you so find, your verdict should be for the Defendant.' " (*Gibson v. International Freighting Corporation, supra,* 173 F.2d at pp. 594-595.)

Smith contends *Gibson* is not authority for the challenged instruction because *Gibson* predates most United States Supreme Court decisions defining seaworthiness and has never been cited for the proposition seaworthiness may be defined in terms of some hypothetical normal crewman. However, *Gibson* is still the law; the Supreme Court has not overruled or criticized *Gibson.*

## IV

Smith contends the challenged instruction improperly shifted the jury's focus away from the vessel's condition onto his condition by defining reasonable fitness in terms of whether an ordinary seaman would be injured and whether Smith's physical condition was equal to an ordinary seaman's. However, Smith mischaracterizes the challenged instruction. Contrary to Smith's contentions, the challenged instruction does not refer to his condition or to the possibility of injury to an ordinary crewman. The challenged instruction only says to be seaworthy defendant's vessel must be reasonably fit for the ordinary seaman. Further, the challenged instruction did not direct

the jury's focus away from the vessel's condition. The court defined seaworthiness at length in terms of the vessel's condition; indeed, the challenged instruction itself is a definition of "seaworthy vessel" as one "reasonably fit for an ordinary seaman." Smith apparently contends in defining unseaworthiness the court should have discussed only the vessel's condition without mentioning the crewmen expected to use the vessel. However, the challenged instruction did not misstate the law of unseaworthiness.

Defendant had the duty to provide sufficient competent men to do the job of lifting, dragging and discharging porpoises. (See *Waldron* v. *Moore-McCormack Lines, Inc.* (1967) 386 U.S. 724, 727-728 [18 L.Ed.2d 482, 485-486, 87 S.Ct. 1410].) However, the parties disputed whether one seaman doing the job was a seaworthy work method. ■ A jury does not determine whether a vessel is seaworthy in the abstract; instead it must consider whether the vessel is reasonably fit for its intended use by some user. The standard of reasonable fitness for intended use implies fitness for use by ordinary expected users. Whether a work method was reasonably fit for its intended purpose can logically be determined only with reference to some expected crew member. In determining whether defendant's work method was reasonably fit for lifting, dragging and discharging porpoises, a fact finder would logically consider what an ordinary seaman could do. Further, to make a vessel seaworthy, an owner must provide a crew "competent to meet the contingencies of the voyage" by employing seamen "equal in disposition to the ordinary men of that calling." (*Boudoin* v. *Lykes Bros. S.S. Co.* (1955) 348 U.S. 336, 340 [99 L.Ed. 354, 359, 75 S.Ct. 382].) It reasonably follows the vessel, its appurtenances and its work methods must be reasonably fit for such ordinary crew members. Moreover, the definition of seaworthiness as the vessel's reasonable fitness for its intended use is somewhat analogous to the standard used in defining defective product design in products liability law. A product design may be found defective when "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 429 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].) In determining whether the design was defective, "the jury considers the expectations of a hypothetical reasonable consumer, [not] those of the particular plaintiff in the case." (*Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112, 126, fn. 6 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].)

Smith concedes the mere occurrence of an injury or accident does not make a vessel unseaworthy. ■ Similarly, a vessel is not unseaworthy merely because a seaman is injured while performing in a normal manner his normal duties requiring physical labor; the vessel is unseaworthy when such work method is not reasonably fit for its intended purpose. Contrary

to Smith's contention, the physical condition of an ordinary seaman may be relevant in determining whether a vessel is seaworthy; seamen are expected to have normal agility and physical coordination. (See *Bilger* v. *Maritime Overseas Corporation* (N.D.Cal. 1969) 304 F.Supp. 1024.) In *Bilger,* the court found using a launch and Jacob's ladder in the ordinary and normal manner to board seamen from a small boat at sea did not create an unseaworthy condition. The court said: "It is obvious that the transfer of a person from a bobbing launch at sea to a rope ladder hanging down the side of a rolling vessel is one that requires a considerable degree of physical coordination and agility. The same can be said of many functions required of seamen in the normal routine of operating a vessel." (*Id.,* at p. 1027.) ▮

To the extent Smith contends the court should have permitted the jury to find defendant's vessel was unseaworthy because his preexisting back condition made lifting, dragging and discharging porpoises a two-man job, he essentially asserts a vessel's unseaworthiness must be determined separately for each seaman according to his own personal capabilities. However, a particular plaintiff's condition is not relevant in determining whether a vessel is seaworthy; rather the vessel must be reasonably fit for its intended use. Once the jury finds a vessel was unseaworthy as not reasonably fit for an ordinary seaman, the particular plaintiff's physical condition may become relevant to proximate cause and damages.

## V

Smith contends the challenged instruction deprived him of a fair jury determination of the issues of unseaworthiness and proximate cause by obliterating the distinction between such issues and effectively directing a defense verdict "by grafting facts relevant only to the determination of causation onto the determination re seaworthiness." He asserts the challenged instruction improperly focused the entire liability portion of the case on his preexisting physical condition. He also asserts by defining unseaworthiness and reasonable fitness to exclude from coverage any crewman with a preexisting condition, the challenged instruction effectively told the jury a finding a crewman suffered from a preexisting condition would end any inquiry as to unseaworthiness. However, it is Smith who blurs the distinction between unseaworthiness and proximate cause by mischaracterizing the challenged instruction. The challenged instruction defining unseaworthiness did not tell the jury to consider Smith's physical condition in determining whether the vessel was unseaworthy; the instruction did not mention Smith's physical condition or proximate cause. The record shows the court instructed the jury separately about unseaworthiness, proximate cause and Smith's preexisting condition. Smith does not attack the instructions about proximate cause and his preexisting condition. Further, after instructing the jury about aggravation of a preexisting condition, the court specifically said unseawor-

thiness and Smith's preexisting condition were separate issues. The court said: "[I]t is the duty of the Defendant to provide Plaintiff with a seaworthy vessel. This means that the vessel, its equipment and work methods must be reasonably fit for an ordinary seaman, one equal in disposition, physical condition and seamanship to the ordinary men in the calling. [¶] So, what you have to do is apply that test to determine seaworthiness. In other words, you have to determine as for an ordinary seaman would the vessel have been seaworthy or unseaworthy. [¶] If you determine for an ordinary seaman that the vessel was unseaworthy, then you go on and if you find a preexisting injury, you may then consider the aggravation thereto suffered by Mr. Smith. . . ."

The court did not err in instructing the jury.

## DISPOSITION

The judgment is affirmed.

Lewis, J., and Lovett, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.