## WALDRON v. MOORE-McCORMACK LINES, INC.

No. 233.   Argued March 13, 1967.—Decided May 8, 1967.

*Theodore H. Friedman* argued the cause and filed briefs for petitioner.

*William M. Kimball* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

The single legal question presented by this case is whether a vessel is unseaworthy when its officers assign too few crewmen to perform a particular task in a safe and prudent manner. It is to resolve this question, which the lower courts answered in the negative[1] and which has caused a conflict among circuits,[2] that we granted certiorari. 385 U. S. 810.

---

[1] 356 F. 2d 247.

[2] Compare *American President Lines, Ltd.* v. *Redfern,* 345 F. 2d 629, with *The Magdapur,* 3 F. Supp. 971; *Koleris* v. *S. S. Good Hope,* 241 F. Supp. 967; and the instant case. Other cases from the Third, Fourth, Fifth, and Ninth Circuits also seem to suggest a result different from the one reached in the instant case. See, *e. g., Ferrante* v. *Swedish American Lines,* 331 F. 2d 571, cert. dismissed, 379 U. S. 801; *Thompson* v. *Calmar S. S. Corp.,* 331 F. 2d 657, cert. denied, 379 U. S. 913; *Hroncich* v. *American President Lines, Ltd.,* 334 F. 2d 282; *Scott* v. *Isbrandtsen Co.,* 327 F. 2d 113; *Blassingill*

Petitioner, a member of the crew of respondent's vessel S. S. *Mormacwind,* was engaged with four other seamen in a docking operation at the stern of the vessel as it approached a pier. At the last minute, the third mate, who was directing the docking, was instructed to put out an additional mooring line, a heavy eight-inch rope, which was completely coiled on the deck. The mate then ordered petitioner and another crewman to uncoil this heavy rope and carry it 56 feet to the edge of the ship. While petitioner was uncoiling a portion of the rope to carry it to the edge of the ship, he fell and injured his back. At the trial, as the Court of Appeals recognized, "[t]here was expert evidence to the effect that 3 or 4 men rather than 2 were required to carry the line in order to constitute 'safe and prudent seamanship.'" 356 F. 2d 247, 248. Petitioner did not contend that the vessel as a whole was insufficiently manned or that there were too few men at the stern engaged in the overall docking operation. Neither did he contend that the third mate or the seaman assigned to uncoil the rope with him was incompetent, or that the rope was itself defective. His sole contention was that the mate's assignment of two men to do the work of three or four constituted negligence and made the vessel unseaworthy. The District Court allowed the negligence issue to go to the jury, which found for respondent, but granted a directed verdict to respondent on the unseaworthiness issue, holding that the above facts could not, as a matter of law, constitute unseaworthiness. The Court of Appeals, with one judge dissenting, affirmed, holding:

"If someone is injured solely by reason of an act or omission on the part of any member of a crew found

v. *Waterman S. S. Corp.,* 336 F. 2d 367; *June T., Inc.* v. *King,* 290 F. 2d 404. For a critical discussion of the decision below, see 66 Col. L. Rev. 1180 (1966).

to be possessed of the competence of men of his calling, there can be no recovery unless the act or omission is proved to be negligent." 356 F. 2d, at 251.

It is here unnecessary to trace the history of the judicial development and expansion of the doctrine of unseaworthiness. That task was recently performed in *Mitchell* v. *Trawler Racer, Inc.*, 362 U. S. 539, 543–549, where the Court, rejecting the notion that a shipowner is liable for temporary unseaworthiness only if he is negligent, concluded: "There is no suggestion in any of the decisions that the duty is less onerous with respect to . . . an unseaworthy condition which may be only temporary. . . . What has evolved is a complete divorcement of unseaworthiness liability from concepts of negligence." 362 U. S., at 549, 550. It is that principle which we conclude the lower courts failed to apply in their decisions in this case.

The basic issue here is whether there is any justification, consistent with the broad remedial purposes of the doctrine of unseaworthiness, for drawing a distinction between the ship's equipment, on the one hand, and its personnel, on the other. As regards equipment, the classic case of unseaworthiness arises when the vessel is either insufficiently or defectively equipped.[3] In *Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96, however, the Court made it clear that the availability of safe and sufficient gear on board does not prevent the actual use of defective gear from constituting unseaworthiness, for the test of seaworthiness is to be applied "when and where the work is to be done." *Id.*, at 104. And in *Crumady* v. *The J. H. Fisser*, 358 U. S. 423, we further clarified the extent of

[3] See generally Gilmore & Black, The Law of Admiralty § 6–38 *et seq.* (1957).

unseaworthiness liability by holding that, even though the equipment furnished for the particular task is itself safe and sufficient, its misuse by the crew renders the vessel unseaworthy. We emphatically stated the basis of our holding: "Unseaworthiness extends not only to the vessel but to the crew." *Id.*, at 427. For that proposition the Court cited *Boudoin* v. *Lykes Bros. S. S. Co.,* 348 U. S. 336, where we said, "We see no reason to draw a line between the ship and the gear on the one hand and the ship's personnel on the other." *Id.*, at 339.[4]

. We likewise see no reason to draw that line here. That being so, under *Mahnich* it makes no difference that respondent's vessel was fully manned or that there was a sufficient complement of seamen engaged in the overall docking operation, for there were too few men assigned "when and where" the job of uncoiling the rope was to be done.[5] And under *Crumady* it makes no difference that the third mate and two men he assigned to perform the job were themselves competent seamen, or that the rope was itself a sound piece of gear. By assigning too few men to uncoil and carry the heavy rope, the mate caused both the men and the rope to be misused.

---

[4] This statement, of course, was made in the context of our holding that unseaworthiness results when a member of the crew is "not equal in disposition to the ordinary men of that calling." 348 U. S., at 340. That is so, we explained, because the shipowner has a duty to provide a crew "competent to meet the contingencies of the voyage." *Ibid.* The Court of Appeals here recognized that "the vessel must be manned by an adequate and proper number of men," 356 F. 2d, at 251 (see, *e. g.*, *DeLima* v. *Trinidad Corp.*, 302 F. 2d 585; *June T., Inc.* v. *King*, 290 F. 2d 404), but then proceeded to draw a distinction between a well-manned ship and a well-manned operation aboard the ship.

[5] Under *Mitchell*, it makes no difference that the unseaworthy condition caused by inadequate manpower "may be only temporary." 362 U. S., at 549. See generally Note, 76 Harv. L. Rev. 819 (1963).

This analysis, we believe, is required by a clear recognition of the needs of the seaman for protection from dangerous conditions beyond his control and the role of the unseaworthiness doctrine which, by shifting the risk to the shipowner, provides that protection. If petitioner had been ordered to use a defective pulley in lifting the rope, he would clearly be protected by the doctrine of unseaworthiness. If the pulley itself were sound but petitioner had been ordered to load too much rope on it, he would likewise be protected. If four men had been assigned to uncoil the rope but two of the men lacked the strength of ordinary efficient seamen, petitioner would again be protected. Should this protection be denied merely because the shipowner, instead of supplying petitioner with unsafe gear, insufficient gear, or incompetent manual assistance, assigned him insufficient manual assistance? We think not. When this Court extended the shipowner's liability for unseaworthiness to longshoremen performing seamen's work, *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85—either on board or on the pier, *Gutierrez* v. *Waterman S. S. Corp.,* 373 U. S. 206, either with the ship's gear or the stevedore's gear, *Alaska S. S. Co.* v. *Petterson,* 347 U. S. 396, either as employees of an independent stevedore or as employees of a shipowner *pro hac vice, Reed* v. *The Yaka,* 373 U. S. 410—we noted that "the hazards of marine service, the helplessness of the men to ward off the perils of unseaworthiness, the harshness of forcing them to shoulder their losses alone, and the broad range of the 'humanitarian policy' of the doctrine of seaworthiness," *id.,* at 413, should prevent the shipowner from delegating, shifting, or escaping his duty by using the men or gear of others to perform the ship's work. By the same token, the shipowner should not be able to escape liability merely because he has used men rather than machines or physical equipment to perform that work.

Petitioner is entitled to present his theory of unseaworthiness to the jury, and the case is reversed and remanded for that purpose.   · *It is so ordered.*

MR. JUSTICE WHITE, with whom MR. JUSTICE HARLAN, MR. JUSTICE BRENNAN, and MR. JUSTICE STEWART join, dissenting.

Under the prevailing cases in this Court, there can be no doubt that a negligent or improvident act of a competent officer, crewman, or longshoreman can result in unseaworthiness if it renders otherwise seaworthy equipment unfit for the purpose for which it is used. *Crumady* v. *The J. H. Fisser,* 358 U. S. 423. Likewise, petitioner argues, an order of a ship's officer assigning too few men to do a particular task creates an unseaworthy condition because the ship is undermanned in this specific respect. He challenges therefore the prevailing rule in the Second Circuit requiring plaintiff in situations such as this to prove not only that the order was improvident but also that the officer issuing it was not equal in competence to ordinary men in the calling. See *Pinto* v. *States Marine Corp. of Delaware,* 296 F. 2d 1; *Ezekiel* v. *Volusia S. S. Co.,* 297 F. 2d 215, and authorities cited therein. The majority agrees with the petitioner, at least where the improvident order requires the performance of tasks whose safe completion calls for the assignment of more men. The majority holds that the case should have gone to the jury on both the negligence and unseaworthiness claims.

In my view, however, this case should be disposed of on other grounds. While it is true that unseaworthiness is legally independent of negligence, *Mitchell* v. *Trawler Racer, Inc.,* 362 U. S. 539, it cannot be denied that in many cases unseaworthiness and negligence overlap. And on the facts of this case I think the claim of negli-

gence was identical with the claim of unseaworthiness. As the majority says, petitioner's sole assertion is that assigning two men instead of three or four to put out the line was "negligence and made the vessel unseaworthy." The testimony supporting the claim was that safe and prudent seamanship would require three or four men to move the line. But the jury ruled against petitioner on his negligence claim, thereby deciding that the mate employed ordinary care in assigning two men to do the task. To me, the jury simply disagreed with petitioner's witness and, based on the testimony of petitioner himself and that of the seaman who helped him, decided that it was not imprudent seamanship to have two men move the line rather than three or four. Had the jury thought otherwise and considered the job to require more than two men, it would have found the issuance of the order to be a negligent act. It is perhaps possible to conceive circumstances in which the assignment of two men to do the job of three would not be negligence, but I find no such special facts in this record. In my view, the adverse verdict on negligence makes unnecessary a retrial on the unseaworthiness claim even if one adopts the majority's resolution of the legal question presented by petitioner.