Allen Lane WILKINS

v.

**P.M.B. SYSTEMS ENGINEERING, INC.**

v.

**BOB HENDERSHOT CONSULTANTS, INC., Aquatic Equipment & Engineering Inc., and Otis Engineering Corporation.**

Civ. A. No. B-80-242A-CA.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 12, 1982.

Grover Russell, Jr., Fairchild, Price & Russell, Center, Tex., for plaintiff.

B. Thomas Cook, Bracewell & Patterson, Houston, Tex., Dale Dowell, Rienstra, Rienstra & Dowell, Hubert Oxford, III, Benckenstein, McNicholas, Oxford, Radford, Johnson & Nathan, Beaumont, Tex., Don Weitinger, Weitinger, Steelhammer & Tucker, Houston, Tex., John D. Rienstra, Jr. Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for defendants.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

The plaintiff, Allen Lane Wilkins, (Wilkins), sues herein for damages under the Jones Act and the General Maritime Law, for injuries he sustained on or about August 12, 1979, while working aboard the vessel ARTHUR BRADY, which was located in the navigable waters of the United

States. Suit has been brought against P.M.B. Systems Engineering, Inc., (P.M.B.), Bob Hendershot Consultants, Inc., (Hendershot), and Richard L. Eustace, (Eustace). This Court has jurisdiction of this cause under the Jones Act, 46 U.S.C. § 688, as well as under the General Maritime and Admiralty Law.

The defendants have asserted claims against one another for contribution and indemnity and also have asserted claims against Aquatic Equipment and Engineering, Inc., (Aquatic), and Otis Engineering Corporation, (Otis), two former defendants who have settled with the plaintiff and entered into a settlement agreement which purports to give Aquatic and Otis an interest in any recovery made by the plaintiff against the remaining defendants.

This case was tried before the Court pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and the Court now renders its decision, including findings of fact and conclusions of law as required by Rule 52, in the form of a Memorandum Opinion.

### I.

On or about August 12, 1979, Wilkins was assigned to work aboard the vessel AR-THUR BRADY which was located in navigable waters, approximately 12 miles off the shore from Sabine Pass, Texas. While attempting to hold a tag line attached to a section of platform being hoisted up from the deck to be placed in position and attached to an oil well Christmas tree, the plaintiff Wilkins injured his back resulting in subsequent surgery for a ruptured disc.

■ The ARTHUR BRADY was owned and operated by Otis and the plaintiff, on the occasion in question, was in the employ of Aquatic. At the same time, Eustace was employed aboard the ARTHUR BRADY as a rig inspector by Hendershot. P.M.B. had contracted with Hendershot to provide it with personnel. This raises the question of the employment status of Eustace. A servant may be loaned to another for special services in which case the employee becomes the servant of the borrower, though he remains in the general employ of

the lender. *Dellums v. Powell,* 566 F.2d 216, (D.C.Cir.1977); *In re Dearborn Marine Service, Inc.,* 499 F.2d 263, (5th Cir.1974). To determine whether the special or the general employer will be held liable for the negligent acts of the servant, the test is under whose control and direction was the servant at the time the negligent act occurred. *In re Dearborn Marine,* supra; *Franks v. Associated Air Center, Inc.,* 663 F.2d 583, (5th Cir.1981). Eustace was under the exclusive control of the defendant P.M.B. Because of the measure of control exercised over Eustace, he was the borrowed servant or employee of P.M.B. though still the general employee of Hendershot. *Magnolia Petroleum Company v. Francis,* 169 S.W.2d 286, (Tex.App.1943, ref. n.r.e.).

On the date in question Wilkins was under the control and supervision of Eustace who was acting in the course and scope of his employment for P.M.B., as a borrowed servant from Hendershot. Just prior to the accident, Wilkins understood Eustace to order him to grab, without assistance of other personnel, a tag line attached to a fabricated deck weighing approximately 14,000 pounds, being hoisted from the deck of the ARTHUR BRADY to be placed in a position to be welded to an oil well Christmas tree. While acting under such orders, Wilkins suffered the injuries which are the subject of this action.

■ P.M.B. was in overall control of the work being performed on the ARTHUR BRADY that day. P.M.B. had undertaken responsibility for the design of the project, direction of the effort, and the staffing of the personnel needed to carry out the work. Under the evidence, the Court finds that P.M.B. assigned too few personnel to the task. The plaintiff Wilkins would not have sustained the injuries that he did had P.M.B. furnished adequate personnel to do the job. P.M.B.'s failure to do so was negligence, and that negligence was a proximate cause of the plaintiff's injuries. *Waldron v. Moore-McCormack Lines, Inc.,* 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967); *Ameri-*

*can President Lines, Ltd. v. Redfern,* 345 F.2d 629, (9th Cir.1965).

In addition to the negligence of P.M.B., the Court also finds that Otis was negligent since its crane operator failed to properly hoist the fabricated deck section from the deck of the ARTHUR BRADY and that such negligence was a proximate cause of the plaintiff's injuries. *Skibinski v. Waterman S.S. Corp.,* 360 F.2d 539, (2nd Cir.1966). Further, the Court finds that Aquatic was the Jones Act employer of the plaintiff and accordingly had a non-delegable duty to furnish the plaintiff with a safe place in which to work. *Mahnich v. Southern Steamship Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). Aquatic failed to do so, which was negligence and also a proximate cause of the plaintiff's injuries.

The Court further finds no liability against Hendershot or Eustace, who at the time said accidental injury occurred was a borrowed servant of P.M.B. A master who loaned a servant to another for a special service is not liable for the negligent act of the borrowed servant where that act resulted in injury to an employee of the one who borrowed the servant. *Magnolia Petroleum Company,* supra; *Dellums,* supra. Further, on the occasion in question, no act or omission committed by the plaintiff constituted negligence or a proximate cause of his accident, and he was therefore not contributorily negligent. *Moschi v. S.S. Edgar F. Luckenbach,* 424 F.2d 1060, (5th Cir. 1970).

## II.

On December 17, 1980, Wilkins entered into a compromise and settlement agreement with Otis and Aquatic for a total sum of $75,000.00. The agreement provided that out of any recovery Wilkins might make against P.M.B., Hendershot and Eustace, Wilkins would only be entitled to the first $10,000.00 with Otis and Aquatic receiving the next $75,000.00. This type of agreement is known as a "Mary Carter" agreement. See 65 ALR3rd 602.

Mary Carter agreements have been held valid by some Courts and invalid by others. 65 ALR3rd 602. This Court need not decide whether these agreements are valid or not. This case calls only for a determination of whether this Court may disregard the Mary Carter agreement involved in this case. A Mary Carter agreement is above all else a release. The Courts jealously protect the rights of seamen, and the scrutiny given to releases . . . signed by seamen differs markedly from that given the ordinary worker. 1A Benedict on Admiralty § 6, pp. 1–47. Few axioms are as time honored and venerated as this one: seamen are to be protected from entering into unfair arrangements. As Justice Story noted in *Harden v. Gordon,* 2 Mason 541, 11 F.Cas. 480, (No. 6047, C.C.Me.1823):

> [Seamen] are emphatically the wards of the Admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner as Courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, [etc.] . . .

This rule was reaffirmed over a century later in the U.S. Supreme Court case of *Garrett v. Moore-McCormack Co., Inc.,* 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

There is no fixed test for the validity of a particular agreement involving a seaman. Generally, the agreement must be fair to the seaman, executed freely, with full knowledge of his rights and with adequate consideration given. *Garrett,* supra; *Harmon v. U.S.,* 59 F.2d 372, (5th Cir.1932). It is clear that the agreement in the case at bar fails to pass this test. The Court finds that the reimbursement provisions of the settlement agreement are unfair, unjust and inequitable and are in degradation of the rights of the plaintiff as a ward of the Admiralty, as are the provisions whereby Wilkins agreed to protect, indemnify and hold harmless Aquatic and Otis from any liability to P.M.B., Hendershot and Eustace. This Court will not enforce the provisions of the Mary Carter agreement.

### III.

The plaintiff, Allen Lane Wilkins is presently 33 years of age, being born on March 16, 1949. According to the official Life Expectancy Tables of the U.S. Department of Health and Human Services, he has a reasonable life expectancy of some 40 years, and a work life expectancy of some 32 years. The Court finds that the reasonable and necessary medical expenses incurred to date from the accident in question are:

| | |
|---|---|
| Schumpert Medical Center, Shreveport, Louisiana | $2,198.05 |
| Dr. M. Ragan Green, The Orthopedic Clinic, Shreveport, Louisiana | $1,500.00 |

Prior to the occurrence made the basis of this suit, Wilkins was a strong, healthy, able-bodied man, gainfully employed as a seaman. He earned in 1979, prior to the injury in question, Nine Thousand Five Hundred Thirty and 25/100 Dollars ($9,530.25). As a result of his injury, Wilkins is disabled and is unable to obtain and keep employment as a welder. Wilkins has sustained a significant loss of capacity to work. He will require future medical treatment and has and will suffer physical pain and mental anguish in the sum of Two Hundred and Fifty Thousand Dollars ($250,000.00), plus past medical damages in the sum of $3,698.05 and future medical damages in the amount of $4,999.95, said sum being both reasonable and necessary. Accordingly, Wilkins has been damaged in the sum of $258,698.00.

Under the evidence, the Court apportions the negligence found herein as follows:

| | | |
|---|---|---|
| a. | P.M.B. | 50% |
| b. | Otis | 25% |
| c. | Aquatic | 25% |

### IV.

In conclusion, Wilkins is entitled to recover his damages sustained as a result of this accident against P.M.B. Systems Engineering, Inc. He is not entitled to any recovery herein against Hendershot or Eustace. P.M.B. is not entitled to recovery, either in contribution or indemnity, over and against Hendershot, Eustace, Otis or Aquatic. Nor is defendant P.M.B. entitled to any credit for the settlement previously made with Otis and Aquatic.

Wilkins is thereby entitled to judgment in the amount of $129,349.00 against P.M.B. Systems Engineering, Inc., together with all costs of court taxed against P.M.B. Systems Engineering, Inc. Judgment will be entered accordingly.