**ST. PAUL FIRE AND MARINE INSURANCE COMPANY,**
Appellee,

v.

**BELLE OF HOT SPRINGS, INC., et al., Appellants.**

No. 87–1273.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1988.

Decided April 14, 1988.

Richard Wootton, Hot Springs, Ark., for appellants.

G. Ray Bratton, Memphis, Tenn., for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

In this declaratory judgment action relating to insurance coverage, Belle of Hot Springs, Inc. (Belle) appeals an order of the district court[1] denying its motion for summary judgment and granting St. Paul Fire and Marine Insurance Company's motion for summary judgment. We affirm.

## I.  BACKGROUND

This case arose out of an accident that occurred in June 1985 on Lake Hamilton in Arkansas when the Belle, an excursion boat, collided with a dock while mooring. The collision resulted in personal injury to passengers and crew.

The pertinent facts are undisputed. The Belle was licensed by the Coast Guard and Craig Buhrow, a licensed operator, was the qualified master on board the vessel.

On the day of the accident Mark Buhrow backed the Belle from her mooring and turned over the pilothouse to Brett Hacker who then piloted the vessel. Hacker was a college student who worked as a crew-

man/deckhand on board the Belle. Hacker had only been employed by the Belle for approximately one month. During this time, Hacker frequently piloted the Belle, but he had never docked the vessel without assistance.

After leaving the dock, Craig Buhrow went to the second deck and tended bar. From this position Craig was able to view the vessel's location and course. As the Belle neared the docking point Craig did not go to the pilothouse to dock the vessel as he had done in the past. Hacker took Craig's absence as an indication of Craig's intent that he should dock the vessel. Hacker attempted to dock the Belle, but he was unsuccessful and the vessel struck the dock.

St. Paul Fire and Marine Insurance Company (St. Paul), the Belle's insurer, filed a complaint seeking a declaratory judgment that it was not liable on its insurance policy issued to the Belle. St. Paul maintains that the Belle breached two warranties contained in the policy—the use of vessel and the seaworthiness warranties—and that the breaches relieved St. Paul of its duties to investigate, defend, or pay claims resulting from the accident.

## II.  DISCUSSION

The insurance policy issued by St. Paul contained the following warranties:

B.  USE OF VESSEL WARRANTY

\*      \*      \*      \*      \*      \*

2.  When the vessel is operated to carry passengers it is agreed:

a.  *that said vessel will be in charge of a qualified Master at all times;*

b.  That the Assured will use its best efforts to comply with all regulations of the United States Coast Guard relating to the carrying of passengers and/or crew;

\*      \*      \*      \*      \*      \*

1.  The Honorable Oren Harris, United States Senior District Judge for the Western District of Arkansas.

3. any violation of these warranties relating to the carrying of passengers shall render this policy void during the term of such violation.

C. SEAWORTHINESS WARRANTY

Warranted at the inception of this policy the vessel shall be in a seaworthy condition and thereafter, during the currency of this policy, the Assured shall exercise due diligence to keep the vessel seaworthy, and in all respects fit, tight, and properly manned, equipped and supplied.

(Emphasis added).

St. Paul argues that the use of vessel warranty was breached because the master was not in charge in that he was not in the pilothouse and did not have actual control of the Belle when the accident occurred. St. Paul also contends that because the vessel was not properly manned the Belle breached the seaworthiness warranty.

In reviewing a district court decision granting a motion for summary judgment, we are governed by the same standard as the district court. "A motion for summary judgment may be granted only if an examination of all the evidence in a light most favorable to the nonmoving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987).

Both parties in this case moved for summary judgment. In ruling on the motions the district court considered deposition testimony of Brett Hacker, Mark Buhrow, and Craig Buhrow and the affidavit of Lt. Cmdr. Halsey, a retired Coast Guard officer. The district court concluded that there were no genuine issues of material fact and that St. Paul was entitled to summary judgment. We agree with the district court that there are no genuine issues of material fact and that summary judgment was proper.[2]

■ The use of vessel warranty required that the Belle be under the direction of a qualified master at all times when operated with passengers onboard. It is undisputed that Hacker was not a qualified master and lacked the experience and training required to safely dock the vessel. On appeal the Belle makes the same arguments which were presented to the district court. The Belle argues that Craig Buhrow's mere presence on the second deck satisfied the use of vessel warranty, noting that Craig Buhrow was in contact with the pilothouse via an intercom system. We disagree.

We believe that the use of vessel warranty requires more than the mere presence of a qualified master. The master must actually be in charge of the vessel in order to satisfy the warranty. Craig Buhrow was never actually in control of the vessel.[3] Indeed it was undisputed that Mark Buhrow piloted the Belle from the beginning of the cruise until he relinquished control of the vessel to Brett Hacker. Thus it is clear that at no time during the cruise was Craig Buhrow in actual control of the vessel. We agree with the district court that:

For a qualified master to be in charge of the vessel, it is necessarily required that he be present in or near enough to the pilothouse to take such action as a sudden emergency would mandate, either through direct control or operational control of the vessel. Craig Buhrow was neither in direct or operational control on the June 22 dinner cruise.

District court opinion at 7–8.

■ The seaworthiness warranty required that the Belle be in a seaworthy condition at the inception of the insurance policy and throughout the policy term. We believe that the Belle breached the seaworthiness warranty because, as already noted, the Belle was being operated without a master in charge. In addition, placing the Belle breached both the use of vessel warranty and the seaworthiness warranty.

---

2. The Belle argues that there are issues of material fact that make summary judgment disposition improper. While we agree that there are issues of fact that are disputed by the parties, we do not believe that the issues are material. We believe that based upon the undisputed facts

3. Craig Buhrow was cited for inattention to duty in a letter warning from the United States Coast Guard and this charge was accepted by Buhrow.

Brett Hacker in the pilothouse made the Belle unseaworthy.

It is clear that the concept of seaworthiness extends to a vessel's crew as well as to the vessel and its gear. *Boudoin v. Lykes Bros. S/S Co.*, 348 U.S. 336, 339, 75 S.Ct. 382, 384, 99 L.Ed. 354 (1955). Thus if the Belle was not staffed with a sufficient number of competent and skillful crewmen then the seaworthiness warranty would be breached.

In *Waldron v. Moore–McCormack Lines, Inc.*, 386 U.S. 724, 87 S.Ct. 1410, 18 L.Ed.2d 482 (1967), the Supreme Court held that a vessel was unseaworthy because too few crewmen were assigned to perform a specific task in a safe manner. Similarly the Fifth Circuit noted that "to be inadequately or improperly manned is a classic case of an unseaworthy vessel." *June T., Inc. v. King*, 290 F.2d 404, 407 (5th Cir. 1961).

There is no question in this case that the Belle was unseaworthy due to an inadequate crew. Brett Hacker was not qualified to dock the Belle due to his inexperience and lack of training. This fact alone justifies a finding that there was a breach of the seaworthiness warranty. We find this case indistinguishable from *Comeaux v. T.L. James & Co., Inc.*, 666 F.2d 294 (5th Cir.1982). In *Comeaux* a mate on a dredge found himself shorthanded and enlisted the aid of a galleyhand to help him perform the duties of deckhand and boathand. The galleyhand had no experience performing these tasks. The galleyhand was placed in charge of the wheel and while under the galleyhand's control the vessel lunged forward injuring a mate on board the vessel. Finding that the vessel was unseaworthy while the galleyhand was at the wheel, the Fifth Circuit stated "[t]he warranty of seaworthiness includes a seaworthy crew and the ship owner's duty is breached by providing a 'defective' or inadequate crew." *Id.* at 299.

We believe the district court correctly stated the controlling principles as follows:

Although the crew herein employed may have been adequate in number under the certificate of inspection issued by the United States Coast Guard and adequate for the purposes of each member's regularly assigned duties, the assignment of Hacker to the position of pilot, without proper training and supervision, rendered the Belle unseaworthy. Furthermore, the inattention to duty by the qualified master by intentional absence from [sic] pilothouse, rendered the Belle unseaworthy. Thus, the Court concludes that the Belle breached the seaworthiness warranty contained in the policy.

District court opinion at 6.

The Belle admits that the acts of Hacker and Craig Buhrow were negligent but argues that a vessel is not rendered unseaworthy because of one act of negligence by an otherwise competent master or crew member. We disagree with the Belle's characterization of this accident as only involving one act of negligence. There were numerous negligent acts on the part of both Hacker and Craig Buhrow that placed the Belle in an unseaworthy condition.

Warranties in marine insurance policies must be strictly complied with and where the language of the policy is unambiguous the court must construe the policy as written. *Benton State Bank v. Hartford Accident and Indemnity Co.*, 452 F.2d 5, 8 (8th Cir.1971). Under the terms of the policy "any violation of [the] warranties relating to the carrying of passengers [renders the] policy void during the term of such violation."

Since we hold that the Belle breached the use of vessel and seaworthiness warranties, St. Paul was relieved of its duty to investigate, defend, or pay claims arising out of the accident.

Finally, the Belle argues that the district court improperly relied on the affidavit of Lieutenant Commander Douglas R. Halsey, a retired officer in the United States Coast Guard with over twenty years active duty. We disagree.

■ In addition to breaches of the use of vessel and seaworthiness warranties, St. Paul alleged that the Belle violated the policy's express warranty which required

the Belle to use its best efforts to comply with Coast Guard regulations. In support of this allegation St. Paul submitted Lt. Cmdr. Halsey's affidavit which consisted of only three short pages. The affidavit merely stated Lt. Cmdr. Halsey's opinions regarding the operation of the Belle and whether the Belle used its best efforts in complying with Coast Guard regulations.

With regard to this allegation the district court stated: "Insofar as the allegation contained in the complaint that Belle failed to use its best efforts to comply with the Coast Guard regulations, the Court finds it unnecessary to reach this issue based upon its findings on the two warranties [use of vessel and seaworthiness] as specified above." District court opinion at 8.

Thus assuming, without deciding, that Lt. Cmdr. Halsey's affidavit was improper we do not believe that the district court considered the affidavit in reaching its decision. In fact as noted above, the district court did not address St. Paul's allegation that the Belle violated the insurance policy's best efforts warranty. As already noted Halsey's affidavit contained his opinion concerning Coast Guard regulations and the entire affidavit dealt exclusively with his experience while with the Coast Guard. Since these matters were not decided by the district court we believe the error, in receiving the affidavit, if any, was harmless.

## III. CONCLUSION

We hold that there were no genuine issues of material fact which precluded the granting of summary judgment and that the district court was correct in concluding that the Belle breached express warranties contained in the insurance policy issued by St. Paul. The use of vessel warranty was breached because the Belle was operated with passengers on board without a qualified master in charge. In addition the

Belle was unseaworthy because Brett Hacker was not qualified to perform the tasks he was assigned. Accordingly, we affirm the decision of the district court.

BEAM, Circuit Judge, dissenting.

I respectfully dissent. I would remand this matter to the district court with directions to enter an order extending insurance coverage to defendants under the St. Paul Fire and Marine Insurance Company (St. Paul) policy.

St. Paul issued its excursion boat insurance policy to S.S. Empress, Inc. which policy provided public liability and other coverage for the operation of the Belle of Hot Springs (Belle). In the "revised schedule of vessels" contained in the insurance contract, the insured warranted that the Belle would operate with no more than three crewmen (in addition to the master of the vessel, apparently) and with no more than 400 passengers.

After the occurrence described in the majority opinion, St. Paul sought to disclaim coverage by alleging violation of the three separate warranties contained in the agreement. These warranties were described at oral argument as the (a) "in charge of" warranty;[1] (b) the "seaworthiness" warranty;[2] and (c) the "best efforts" warranty.[3]

Counsel for St. Paul pointed out at oral argument that the trial judge did not reach the issue of the best efforts warranty. Thus, we deal in this appeal with only the other two.

## I. SEAWORTHINESS

I address the seaworthiness warranty first because it provides, in my opinion, the most tenuous basis for the granting of the St. Paul motion for summary judgment.

---

1. "That said vessel will be in charge of a qualified Master at all times."

2. "Warranted at the inception of this policy the vessel shall be in a seaworthy condition and thereafter, during the currency of this policy, the Assured shall exercise due diligence to keep the vessel seaworthy, and in all respects

fit, tight, and properly manned, equipped and supplied."

3. "That the Assured will use its best efforts to comply with all regulations of the United States Coast Guard relating to the carrying of passengers and/or crew."

Seaworthiness is a concept which encompasses the condition of the vessel and, in appropriate instances, the manning of the ship. There is no real dispute that a boat may be or may become unseaworthy if it lacks a crew of sufficient size to operate the vessel with safety. *Waldron v. Moore–McCormack Lines,* 386 U.S. 724, 728, 87 S.Ct. 1410, 1412, 18 L.Ed.2d 482 (1967); *June T., Inc. v. King,* 290 F.2d 404, 407 (5th Cir.1961). Likewise, an incompetent crew may lead to unseaworthiness. *Waldron,* 386 U.S. at 727, 87 S.Ct. at 1412. *Cf. Usner v. Luckenback Overseas Corp.,* 400 U.S. 494, 500, 91 S.Ct. 514, 518, 27 L.Ed.2d 562 (1971). However, a single, isolated incident of operational negligence involving a single member of the crew does not rise to the level of creating a condition of unseaworthiness. *Unser,* 400 U.S. at 500, 91 S.Ct. at 518 *Campbell v. Seacoast Products, Inc.,* 581 F.2d 98, 99 (5th Cir. 1978).

St. Paul claims that placing Brett Hacker, the most inexperienced member of the crew, at the helm of the Belle made her unseaworthy. Counsel argues that the unseaworthy condition commenced two hours before the accident when Hacker was assigned by the master, Craig Buhrow, to pilot the vessel without the immediate supervision of Buhrow. Such an argument is conceptually faulty under the facts of this action because no cause of action implicating the insurance coverage arose until the time of the collision with the dock, which collision resulted in personal injury to passengers. The occurrence, if any, giving rise to a breach of the seaworthiness warranty had to be the inartful docking of the vessel by Hacker or the failure of Craig Buhrow to return to the pilothouse in time to assume direct or constructive control of the docking operation. The uneventful cruise by the Belle on Lake Hamilton with Hacker at the controls is not material to the issues in this case.

As warranted, the Belle was operating with three crew members. Therefore, the cases cited by St. Paul dealing with insufficiency in the number of crewmen are inapposite. Thus, the unseaworthy condition alleged must rest as previously indicated upon the act of the ship's master in putting Brett Hacker in a position to dock the vessel without immediate assistance from a more experienced pilot or, in the alternative, Hacker's act of docking the boat by himself. If one of these acts is sufficient to breach the seaworthiness warranty and to void coverage, there are many situations in which St. Paul will not have exposure under the policy. Only acts performed by the master or by experienced crewmen will extend coverage and then, only if an inexperienced employee is not involved. Use of crewmen undergoing training will, inevitably, lead to abrogation of insurance coverage if they are guilty of any measure of culpable conduct. In my view, neither the insurer nor the insured could have reasonably contemplated at the time the policy was issued such sweeping protection for the insurance company under the seaworthiness warranty.

St. Paul contends that the evidence is "uncontroverted" that Hacker "had absolutely no experience piloting or docking the vessel alone with passengers aboard." Appellee's brief at 13. The deposition of Craig Buhrow and Brett Hacker place this statement in dispute. Hacker had piloted the ship on more than 30 occasions and had successfully docked the vessel with passengers on board. Craig Buhrow's deposition at 43:9–44:1, 69:15–70:10. It is true, apparently, that Hacker had never docked the vessel without a more experienced pilot standing by to help if needed and that Hacker was not considered by the master to be experienced enough to perform this docking act unsupervised. Craig Buhrow testified:

Q. Okay, you felt comfortable with Mr. Hacker docking the vessel as long as you were in the pilothouse instructing him, I assume?

A. (Craig Buhrow) Yes.

Q. But you didn't feel comfortable with him doing it with your not being there?

A. That's right.

Q. Why was that?

A. Because in my opinion I didn't feel that he was ready for a solo landing as yet.

Q. Just lack of experience?

A. Right.

Craig Buhrow deposition at 92:25–93:11.

The evidence is clear, however, that Hacker was instructed not to dock the vessel until Craig Buhrow returned to the pilothouse. In fact, Hacker took steps to extend the time consumed by the trip because he expected Craig Buhrow to appear to supervise the docking operation. Buhrow did return to the pilothouse at almost the instant of the crash. Thus, the only act which could have resulted in the alleged creation of an unseaworthy condition was the failure of Craig Buhrow to return to the wheelhouse to supervise the act of landing the vessel by Hacker or to perform the task himself if conditions dictated that he should. This may have been negligence. It was not a violation of the seaworthiness warranty. There were sufficient crewmen on board to safely operate the ship and the crewmen on board, collectively, had sufficient skills to perform all required tasks. Crewman Mark Buhrow, the master's brother, was an experienced pilot who had previously held a license issued by the State of Iowa. He had been the regular pilot when the boat operated on Lake Okoboji, Iowa. Therefore, the quantity and quality of the crew in this instance made the vessel seaworthy. And, assuming for the sake of argument that an isolated act of negligence involving a single crewman can give rise to an unseaworthy condition, under the facts of this action, the issue, at the very least, involves a dispute of material fact which cannot be decided by a motion for summary judgment.

## II. MASTER IN CHARGE

Unlike the seaworthiness warranty, the alleged breach of the "in charge of" warranty is susceptible to resolution through a motion for summary judgment. It should, however, have been decided in favor of coverage.

St. Paul argues that the ship's master cannot be *in charge of* the vessel unless he or she is in control of the ship. Presumably that means, according to the district court, that the master must "be present in or near enough to the pilothouse to take such action as a sudden emergency would mandate, either through direct control or operational control of the vessel." Majority opinion at 552.

There is little dispute that the master is in charge of the entire ship. This includes the engine room, the lifeboats, and the galley as well as the pilothouse. Therefore, one needs to change the facts only slightly to illustrate the vagaries of the position taken by St. Paul.

Presumably, there is but one master on board a ship. Thus, if he or she is called away from the pilothouse for an emergency such as a fire in the engine room, he or she must relinquish both direct and operational control of the steering wheel. Yet, under the analysis advanced by the district court and approved by the majority, the "in charge of" warranty is breached and coverage abrogated when this occurs because, to preserve coverage, the master must at all times be in or near enough to the pilothouse to take such action as would be necessary through direct or operational control of the boat. This would appear to be true under the rationale advanced by St. Paul regardless of the skill or experience of any other crewman in piloting the vessel during the master's absence from the wheelhouse. I do not read the policy to require such a result, and if it does, I would suggest that state insurance authorities may want to review their approval of these policy forms and require better protection for the passengers who book voyages on vessels insured under this policy language.

Thus, for the reasons stated, I would reverse and remand this case to the district court with instructions to find coverage which protects the injured passengers.