[No. A050220. First Dist., Div. Two. June 11, 1992.]

BETTY TINSLEY et al., Plaintiffs and Appellants, v.
AMERICAN PRESIDENT LINES, LTD., Defendant and Respondent.

564

**Counsel**

Lyle C. Cavin, Jr., and Jeffrey M. Cowan for Plaintiffs and Appellants.

Finan, White & Paetzold and Robert J. Finan for Defendant and Respondent.

## OPINION

**PETERSON, J.**—This is an action for wrongful death. Charles G. Tinsley, a merchant seaman, died of lung cancer in January 1989. Shortly thereafter, his heirs (appellants) filed a complaint against respondent American President Lines, Ltd. (APL), seeking damages because APL had sold Tinsley some of the cigarettes which allegedly caused his cancer. The trial court granted summary judgment in favor of APL, finding appellants could not recover as a matter of law. Appellants appeal. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Charles Tinsley worked as a merchant seaman for over 40 years, from 1945 through 1987. During that time, Tinsley worked for at least 12 different merchant shipping companies aboard approximately 42 separate vessels. Tinsley's employment by APL vessels accounted for about 38 percent of his total employment.

APL and other shipping companies are required by law to maintain a "slop chest" on their merchant vessels. (46 U.S.C. § 11103.) A slop chest is essentially a small store of personal items which seamen may purchase. Among other things, the slop chest must contain cigarettes for use by seamen who so desire. (46 U.S.C. § 11103(a)(7).) Because they are duty free and tax free, and because their price is limited to 10 percent above wholesale, these cigarettes are considerably less expensive than those sold at retail outlets within the United States. (46 U.S.C. § 11103(b).)

Beginning in 1966, all cigarettes packaged for sale in the United States were required to carry a warning advising of the adverse health consequences of smoking. (15 U.S.C. § 1333.) Cigarettes manufactured for sale and use beyond the jurisdiction of the United States, such as those for sale upon a vessel, were and are specifically exempted from the federally mandated warning requirements. (15 U.S.C. § 1340.)

Tinsley began smoking before he became a merchant seaman in 1945 and continued to smoke past the date when he last worked for APL in 1987. While working as a merchant seaman, Tinsley apparently purchased some of his cigarettes from slop chests aboard APL vessels. No warning was present on these cigarettes. Tinsley then smoked the cigarettes he had purchased both while on vessel and while on shore.

Tinsley was diagnosed as having lung cancer in 1988. He subsequently died of the disease in January 1989. Shortly thereafter, his heirs filed a

complaint for wrongful death against APL, seeking to hold it responsible for damages under two theories applicable in maritime law. First, appellants alleged APL was guilty of negligence under the Jones Act (46 U.S.C., Appen. § 688) because the cigarettes which APL sold to Tinsley did not contain a statement warning of the health dangers of smoking. Second, appellants alleged that in selling cigarettes which did not have a warning, APL failed to maintain its ships in a seaworthy condition.

After what appears to have been extensive discovery, APL moved for summary judgment arguing that, as a matter of law, appellants could not recover under the theories they had alleged. The trial court agreed and entered judgment accordingly. This timely appeal followed.

II. DISCUSSION

Appellants maintain the trial court erred when it held they could not recover under either Jones Act or seaworthiness theories of liability. We disagree.

Under the Jones Act, a seaman who suffers a personal injury in the course of his employment as a result of his employer's negligence may bring an action for damages. (46 U.S.C., Appen. § 688.)[1] The primary issue on this appeal as it relates to appellants' Jones Act theory of liability is whether Tinsley's injury occurred "in the course of his employment." Courts have long interpreted this phrase broadly because of the unique relationship between a seaman and his employer. As a leading commentator has recognized, "The nature of the seaman's employment is such that his vessel becomes both his factory and home—a vestigial remainder of the ancient days when apprentices and journeymen were housed and fed in the homes of their employers. When the vessel is at sea it cannot be said that the seaman's time is his own." (2 Norris, The Law of Seamen (4th ed. 1985) § 30:30, p. 437.) Recognizing this unique relationship, courts have interpreted a wide variety of incidents, many of which did not occur on the job in the conventional sense, to be "in the course of [a seaman's] employment" for purposes of establishing Jones Act liability. For example, in *Holm* v. *Cities Service Transp. Co.* (2d Cir. 1932) 60 F.2d 721, 722, a seaman who suffered injuries while returning to his quarters after securing a drink of water was allowed to recover because his injuries were sustained in the course of his employment. In *Thompson* v. *Eargle* (4th Cir. 1950) 182 F.2d 717, 718-719, a seaman's

---

[1]"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury . . . ; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law . . . ." (46 U.S.C., Appen. § 688(a).)

course of employment was held to include his activities while borrowing bread from another vessel for a customary late hour snack. Even injuries occurring while on shore during a sea voyage have been held to be suffered "in the course of [a seaman's] employment" and, thus, compensable under a Jones Act claim. (See *O'Donnell* v. *Great Lakes Co.* (1943) 318 U.S. 36, 38-39 [87 L.Ed. 596, 599-600, 63 S.Ct. 488].)

However, while the scope of activities held to be within the course of a seaman's employment as defined by the Jones Act is unquestionably broad, neither party to this appeal has cited a case where liability was found to exist under facts similar to those presented here. Appellants do not seek recovery for injuries resulting from a single event or even a series of events which occurred while Tinsley was in the service of APL; rather they seek to hold APL responsible for the consequences of Tinsley's lifetime habit of smoking merely because Tinsley continued to smoke during periods when he was employed by APL. We are unconvinced that an extension of Jones Act liability under these circumstances is appropriate.

The undisputed evidence submitted in support of the motion for summary judgment established that Tinsley (1) began smoking cigarettes when he was in high school, before he was ever employed as a seaman; (2) smoked the majority of his cigarettes on land while in California; and (3) continued to smoke cigarettes until May 1988, almost a year and a half after he was last employed by APL or any other shipping company. Given these facts, we must conclude Tinsley's injury was not suffered in the course of his employment, but rather in the course of a lifetime habit. Since an essential element for establishing a Jones Act claim was missing, summary adjudication was properly granted on this theory of liability.

This conclusion is supported by substantial public policy concerns. Interpreting a claim, such as that presented here, as one arising in the course of a seaman's employment would mean that Jones Act liability could be established by any seaman claiming injury as the result of his long and continued ingestion or use of a consumer product, so long as he used or consumed some portion of that product while serving on a merchant vessel. Employers of seamen would thereby become the virtual guarantors of their employees' health. Such an extension of Jones Act liability is unprecedented and unwarranted.

In an attempt to refute this conclusion, appellants rely primarily upon the minimal standard of causation which must be shown to establish Jones Act liability. ■ Under well established rules, legal cause is proven when an employer's negligence plays "any part, even the slightest, in producing the injury or death for which damages are sought." (*Rogers* v. *Missouri Pacific R. Co.* (1957) 352 U.S. 500, 506 [1 L.Ed.2d 493, 499, 77 S.Ct. 443].) One

commentator on maritime law has gone so far as to describe this burden as "featherweight." (Gilmore & Black, The Law of Admiralty (2d ed. 1975) § 6-36, p. 377.) ■ We believe this argument improperly blurs the distinction between the issues of causation and of whether an injury occurred in the course of a seaman's employment. While under the authorities cited a plaintiff's burden of proving causation is indeed slight, causation only becomes an issue if the injury generating the litigation occurs in the course of a seaman's employment. Appellants have not proven Tinsley was injured in the course of such employment, and their arguments concerning the minimal Jones Act burden of proving causation of that injury are accordingly inapposite.

■ We also believe the trial court properly ruled that appellants could not recover on their seaworthiness cause of action. ■ Under the seaworthiness doctrine, a ship owner is responsible for any injury or death which is caused by his failure to provide a vessel which is reasonably fit for its intended purpose. (See 2 Norris, The Law of Seamen, *op. cit. supra*, § 27.1 et seq., pp. 190-195.) Breach of this warranty will impose liability without a showing of negligence or fault. If an unseaworthy condition can be shown to have caused an injury, the exercise of reasonable care or due diligence will not relieve the ship owner of liability. (*Mahnich v. Southern S. S. Co.* (1944) 321 U.S. 96, 100 [88 L.Ed. 561, 565, 64 S.Ct. 455].)

The issue of seaworthiness normally arises in the context of a challenge to the fitness of a vessel or its appurtenances (see, e.g., *Mitchell v. Trawler Racer, Inc.* (1960) 362 U.S. 539, 550 [4 L.Ed.2d 941, 948, 80 S.Ct. 926]); however, the doctrine is applied in a wide variety of circumstances. The failure to provide a competent master or officer has been recognized as constituting unseaworthiness (*The Rolph* (9th Cir. 1924) 299 F. 52, 55), as has the assignment of an insufficient number of persons to perform a task (*Waldron v. Moore-McCormack Lines* (1967) 386 U.S. 724, 727-728 [18 L.Ed.2d 482, 485-486, 87 S.Ct. 1410]). Unseaworthiness has also been held to arise from unsafe or deficient living conditions such as toxic fumes (*Smith v. Ithaca Corp.* (5th Cir. 1980) 612 F.2d 215, 219, disapproved on other grounds, *Beech Aircraft Corp. v. Rainey* (1988) 488 U.S. 153 [102 L.Ed.2d 445, 109 S.Ct. 439]), or the absence of toilet facilities (*Deal v. A. P. Bell Fish Co.* (5th Cir. 1982) 674 F.2d 438, 442). One case has even extended the doctrine to include a box of soft drinks intended for a ship's store. (*Martinez v. Sea Land Services, Inc.* (1st Cir. 1985) 763 F.2d 26.) The court held that a seaman, who was carrying a box and injured his back when a plastic sleeve surrounding the drinks slipped, had stated a cause of action for unseaworthiness. (*Id.* at pp. 27-28.)

■ Unquestionably, the range of conditions on board ship held to be within the seaworthiness doctrine is wide. However, once again, appellants

have failed to cite a single case where a vessel was held to be unseaworthy under facts similar to those they present here. Appellants do not argue APL's ships were unseaworthy because cigarettes were sold on board; they argue APL's ships were unseaworthy because the cigarettes which were sold did not possess a warning label. Since the essence of an action for unseaworthiness is proof that the ship owner provided something which was not fit for its intended purpose, appellants, in effect, maintain that, while cigarettes which possess a warning are fit for consumption, the same cigarettes *without* a warning are not and furnishing them for purchase by a seaman produces an unseaworthy condition.

We seriously question whether such a labeling distinction is a sufficient basis to establish an unseaworthiness claim. Cigarettes with or without warnings attached are equally dangerous. The only advantage of a warning is that those consuming cigarettes which are so marked are probably more aware of the dangers involved. However, even assuming this to be true, appellants have cited no legal principle which would obligate a ship owner to warn his seamen of the commonly known dangers inherent in common consumer products. Implying such an obligation is unwarranted. Carried to its logical extension, such obligation would require a ship owner to warn seamen of the potential dangers to health, known or suspected, of every common consumer product constituting food or drink each time it was served.

In any event, we need not base our decision on the rather anomalous distinction which appellants seek to draw, because appellants' seaworthiness theory of liability must fail on another ground. ■ Unlike claims based upon the Jones Act, where an owner's negligence need only play a slight part in bringing about the injury alleged, to establish proximate cause in a seaworthiness action, a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury alleged. (*Johnson* v. *Offshore Exp., Inc.* (5th Cir. 1988) 845 F.2d 1347, 1354.) ■ In the context of the present case, appellants bore the burden of proving that the lack of warnings on cigarettes Tinsley purchased from APL was a substantial factor in bringing about his death. Even under the liberal rules applicable when considering motions for summary judgment, appellants failed to meet this burden.

In support of its motion, APL relied primarily upon portions of the deposition of Betty Tinsley, the wife of Charles Tinsley. Mrs. Tinsley stated that she and her husband became aware of the Surgeon General's report on the adverse health effects of smoking when it was first published in 1964, but that it made absolutely no effect on her husband's decision to smoke. As Mrs. Tinsley admitted, "[He] was his own person, and nothing anyone said

was going to—if he was going to do something, he was going to do it." When asked, "If he was going to smoke, nothing anyone said was going to change that," Mrs. Tinsley admitted, "That was it." Mrs. Tinsley also admitted that, when her husband smoked cigarettes carrying the Surgeon General's warning, the presence of the warning made no difference in the number of cigarettes he smoked or the manner in which he smoked them. These unequivocal admissions negate the proximate cause element necessary to establish an action for unseaworthiness. The absence of a warning was simply not a substantial factor in bringing about Mr. Tinsley's death. Since that essential element of appellants' seaworthiness claim was missing, the trial court properly granted summary judgment.

Appellants maintain that Mrs. Tinsley's admissions are insufficient to sustain the trial court's ruling. Noting that, under well established rules governing motions for summary judgment, affidavits of a moving party are strictly construed while those of an opponent are construed liberally (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134]), they argue that a triable issue of fact was presented as to whether the absence of warnings in fact contributed to Mr. Tinsley's death. This argument ignores the high level of credibility afforded to admissions made during discovery. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10].) ▇ Admissions made in depositions are "entitled to and should receive a kind of deference not normally accorded" to other types of evidence. (*Ibid.*) ▇ Here, affording Mrs. Tinsley's admissions the weight to which they are entitled, we must conclude no issue of causation was present. The trial court properly granted summary judgment.[2]

III. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Benson, J., concurred.

A petition for a rehearing was denied June 2, 1992, and appellants' petition for review by the Supreme Court was denied September 17, 1992.

---

[2]Having reached this conclusion, we need not determine whether, as respondent maintains, appellants' unseaworthiness cause of action is also barred by section 402A of the Restatement Second of Torts.