**Dionisio MARTÍNEZ & María Julia Dávila, Plaintiffs,**

v.

**SEA–LAND SERVICE, INC., Defendant.**

**Civ. No. 83–2904(PG).**

United States District Court,
D. Puerto Rico.

May 8, 1986.

Harry Ezrraty, San Juan, P.R., for plaintiffs.

William A. Graffam and David C. Indiano, San Juan, P.R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Plaintiff, Dionisio Martínez, and his wife, María Julia Dávila, brought this action against defendant, Sea-Land Service, Inc., alleging that defendant's vessel, the SS BOSTON, was unseaworthy and that this unseaworthy condition caused an injury to Mr. Martínez.[1] A bifurcated, non-jury trial was held on April 7, 1986, during which evidence concerning the issue of liability alone was presented to this Court. After careful review of the content of the testimony of the witnesses and the exhibits submitted by the parties, this Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### Findings of Fact

It is undisputed that plaintiff was employed by defendant between June 23, 1982, and November 8, 1982, in the capacity of an ordinary seaman. On October 29, 1982, plaintiff went to the Chief Mate aboard the vessel, Mr. Robert Allen, and sought medical attention. The Chief Mate issued a "Request for Medical Treatment" form to the plaintiff.

This form noted that the seaman was complaining of pain in the lower abdominal area on the left side, with more acute pain when bending from waist. The pain was felt as a burning sensation. The plaintiff took this form and was attended by a physician at the Presbyterian Hospital in San Juan, Puerto Rico, who diagnosed his condition as spina bifida. He was marked "fit-for-duty" and he returned to the vessel.

On November 8, 1982, plaintiff again visited the Chief Mate and was issued a second "Request for Medical Treatment" form. The form noted his condition had already been diagnosed as "spina bifida." After being attended again at the Presbyterian Hospital, he was marked "not-fit-for-duty."

The remainder of the material facts are in dispute. The plaintiff was his only witness. For the defendant, the Chief Mate provided testimony. Both sides submitted documentary evidence, and it is upon that evidence, along with the oral testimony of the plaintiff and Chief Mate, that the following findings are made.

Plaintiff contends he hurt his back while carrying cases of soft drinks to the ship's slop chest. He states that he, along with

---

1. This matter is before this Court on remand so that the Court may consider the unseaworthiness claim. *Martínez v. Sea-Land Service, Inc.,* 763 F.2d 26 (1st Cir. 1985). Appellant did not appeal the earlier dismissal of his Jones Act claim. *Martínez v. Sea-Land Service, Inc.,* 597 F.Supp. 722 (D.P.R.1984).

three or four other men, carried approximately 15 to 20 cases about 70 feet aboard the ship. Although free to carry as many cases as he pleased, and in the manner he pleased, plaintiff chose to carry two cases at a time on his shoulder.

As he approached the cases, he inspected them and saw nothing wrong. Each case had a plastic sleeve around it. Plaintiff claims that on his last trip, once the cases were on his shoulder, they began to slip backwards as the plastic sleeve began to come forward. In an effort to prevent the cases from falling, plaintiff claims to have twisted his back.

On the issue before the Court we find in favor of the defendant. First, on the evidence presented at trial there is nothing that comes close to establishing an unseaworthy condition. Nothing presented at trial revealed that the case or cases of soft drinks, or the plastic sleeves around them were torn, defective or otherwise unfit for its intended use. That it may have slipped, given the manner in which plaintiff carried the cases, cannot and does not establish a defective condition since there was no testimony by plaintiff as to how the sleeve was supposed to be. On plaintiff's own testimony, the case would have to be dismissed.

Second, notwithstanding the fact that plaintiff's testimony does not establish any unseaworthy condition, his claim of the occurrence of an accident is simply not believable. To begin with, plaintiff states his accident occurred on June 30, 1982. Yet, he made no report of it. Plaintiff testified that he knew it was company policy to report such accidents but did not do so. He admitted that he had been injured on previous voyages and that he was aware of reporting procedures. He had been sailing since 1966 and had reported several minor injuries and illnesses during these years. Yet, plaintiff failed to mention any trauma or accident as a cause of his condition when he visited the Presbyterian Hospital on October 29, and November 8 and did not provide attending physicians with history of his injury or illness. We do not accept

plaintiff's present version of an alleged accident as the origin of his condition.

Thirdly, notwithstanding the alleged injury of June 30, he worked until November 8, 1982, when he informed the Chief Mate only that he was leaving the ship for vacation and would receive medical treatment while on leave. According to plaintiff, the pain from the alleged accident became severe around September 1982. Yet, with severe pain he worked 120 hours of overtime in September, 62 of which were voluntary. Included in this overtime was chipping and painting.

Moreover, what makes the claim of an accident incredible is that he never told the Chief Mate of any accident on either October 29, 1982, or November 8, 1986, and this despite the Mate's specific inquiries. The mate testified that he asked plaintiff these questions because it was the company's established policy to fill out accident report forms if there was an accident or injury aboard the ship. On every occasion that the Chief Mate and the plaintiff discussed his problem, plaintiff specifically denied that any accident occurred. Plaintiff would now have us believe he was lying then.

It was not until November 17, 1982, nine days *after* leaving the ship, that plaintiff came forth with a version of his accident when he requested maintenance and cure payments. At that time he signed a statement which made no mention of defective sleeves. He reiterated on February 28, 1984, during a deposition, that the statement of November 17, 1982, contained all the details of his alleged accident. There was never any mention of a defect in the cases of soda until after plaintiff's deposition, one and a half years after the alleged incident. We simply do not find plaintiff's story credible in view of these facts.

Plaintiff worked months after his alleged injury. He told no one of the alleged incident even though he stated that he knew he could be aggravating his condition. When he finally reported the pain, he did not mention any accident. When he finally alleged an accident, he completely omitted

the crucial detail of the alleged loose sleeve which he now contends to be the unseaworthy condition which caused his condition.[2] These inconsistencies cannot be ignored.

Plaintiff's credibility was further weakened by his allegation that he could not understand the English in the Statement which he signed. At trial, plaintiff used a translator. Yet, during his deposition, plaintiff also had a translator and he stated that he read the statement. In addition, plaintiff testified that he lived in New York for 19 years and had successfully completed his seaman's training course in English, utilizing English texts. When answering the Court's questions regarding the statement, plaintiff admitted he checked the statement to make sure his version was set forth so that he could collect maintenance and cure. Finally, the Court noted that plaintiff, at times during the Court's questioning, would answer without awaiting a translation of the question. Not only does this cast serious doubts as to plaintiff's claim of not understanding English, it colors his entire testimony.

We conclude that there was no credible evidence of an unseaworthy condition existing on the SS BOSTON and that plaintiff's condition is not a result of an injury aboard the SS BOSTON. This Court rejects plaintiff's testimony due to the glaring contradictions which emerged on cross-examination. In this sense, these facts are unlike those in *Santana v. United States*, 572 F.2d 331 (1st Cir.1977), insofar as the plaintiff in the instant case placed his own credibility in grave doubt due to the series of highly questionable responses to interrogatories of this Court as well as defense counsel. Furthermore, whatever glimmer of veracity the plaintiff may be credited was extinguished by the wholly believable and consistent testimony of the Chief Mate.

### Conclusions of Law

The doctrine of unseaworthiness is well-established. A shipowner must provide a seaworthy vessel. *Carlisle Packing Company v. Sandanger*, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927 (1922). This duty does not obligate the shipowner to provide an accident-free ship but rather "to furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960); *Jordan v. United States Lines, Inc.*, 738 F.2d 48 (1st Cir. 1984). At trial, plaintiff was confronted with his earlier sworn testimony at a deposition in which he called the vessel a "magnificent ship" and stated there was no defect in the ship's structure or appurtenances.

■ As stated above, plaintiff's version of the accident during trial falls short of even alleging sufficient facts to establish the basic elements of a case of unseaworthiness. Plaintiff has not shown that the sleeves were not fit for their intended use. There was no testimony as to the intended use of the sleeves or in what way they were defective. Since plaintiff has not established a *prima facie* case of unseaworthiness, the complaint must be dismissed. Based on plaintiff's testimony, we find the SS BOSTON seaworthy with respect to the facts alleged.

■ But even assuming, *arguendo*, that we accept that a *prima facie* case was alleged, we find plaintiff's version too incredible to be believed in view of the inconsistencies evinced at trial. We observed the demeanor of both witnesses and the manner in which they responded to questions crucial to the case, from the Court and the defense. The version submitted by the Chief Mate was wholly consistent with all the documentary evidence submitted by both parties, while the plaintiff's version was not. Furthermore, plaintiff was impeached by his earlier statement and deposition.

We find for the defendant. The complaint is hereby DISMISSED, and the Clerk

---

**2.** We note that plaintiff's "condition" is spina bifida. A cursory review of medical dictionaries reveals that spina bifida is a congenital defect not associated with trauma.

is ORDERED to enter judgment accordingly.

IT IS SO ORDERED.